# EXHIBIT 6

**[HIGHLY CONFIDENTIAL; ATTORNEYS' EYES ONLY]**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ADSTRA, LLC,

        Plaintiff,

vs.

KINESSO, LLC and
ACXIOM, LLC,

        Defendants.

        Civil Action No.: 24-CV-02639

---

**Affirmative Calculation of Damages for: ADSTRA, LLC**

**Christopher W. Young Ph.D.**

**Dated: October 22, 2024**

and that the "reasoning or methodology properly can be applied to the facts in the case."[3]

6. *Federal Rule of Evidence 702.* The Federal Rule of Evidence 702 codifies the principles set forth from the Daubert Standard. Specifically, the statute states:[4]

    i. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the witness demonstrates to the court that it is more likely than not that:

        a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

        b. the testimony is based on sufficient facts or data;

        c. the testimony is the product of reliable principles and methods; and

        d. the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

7. My affirmative methodologies, assumptions, calculations, and Affirmative Report were performed according to the above standards. Please note that I have assumed liability only when calculating economic loss.

## II. DOCUMENTS REVIEWED AND RELIED UPON

8. In preparing my opinions, I have reviewed the following documents and categories of documents:

    i. Court filings;
    ii. Adstra financial documents;
    iii. Certain Conexa and Real ID omnichannel identity resolution product ("OIRP") contracts and associated documents;
    iv. Deposition transcripts and specific exhibits to such transcripts; and,
    v. Publicly available resources.

A complete list of the documents reviewed and relied upon in this report can be found in **Appendix E.** In addition to reviewing documents, I also spoke with Jonathan Kelleher ("Mr. Kelleher"), Adstra Chief Financial Officer ("CFO"), Jason Bier ("Mr. Bier"), Adstra General Counsel ("GC") and Chief Privacy Officer ("CPO"), and Andrew Johnson ("Mr.

---

[3] *Daubert*, 509 U.S. at 593-95.
[4] *Federal Rules of Evidence 702;* https://www.law.cornell.edu/rules/fre/rule_702.

Johnson"), Adstra Chief Technology Officer ("CTO") (Collectively referred to as "Senior Management") on multiple occasions, including on October 2, 10, 21, and 22, 2024.

9. I understand that discovery in this case is ongoing, and additional documents or information may be available for my review and consideration. Expressly, I understand Acxiom has produced minimal documentation about its Real ID OIRP contracts, customer lists, historical revenues and costs, and forecasts, among other discovery requests. Specifically, the following documents have been requested by the Plaintiff, but I understand have not been produced by the Defendants (referred to herein as "Unavailable Discovery"):[5]

   - All documents concerning the creation of Real ID including but not limited to Acxiom's annual and/or forecasted revenue for 2021, 2022, 2023 and projected revenue for 2024 and 2025 for any reference graph offered by Acxiom;
   - Kinesso's annual and/or forecasted revenue for 2021, 2022, 2023 and projected revenue for 2024 and 2025 for Kinesso's reference graph, Kii, and related products;
   - Development costs and expenses attributable to Real ID;
   - All agreements, statements of works, and related schedules or attachments between Acxiom and a third party related to the licensing or sale of Real ID.
   - All agreements, statements of works, and related schedules or attachments between Kinesso and a third party related to the licensing or sale of Kii or an OIRP.
   - All invoices and statements of accounts issued by Acxiom in connection with the licensing or sale of Real ID.
   - All invoices and statements of accounts issued by Kinesso in connection with the licensing or sale of Real ID.

10. Note of importance: it is essential to highlight that in cases such as this, and based on my experience, both parties typically provide customer lists concerning the product for which intellectual property violations are asserted. In this matter, I would typically look at the overlapping customers and their sales and revenue and determine when they began working with the Plaintiff and Defendants. Ultimately, I would determine the revenue and profits of the overlapping customers. When this data is available, which is almost always, I can determine the ultimate loss to the Plaintiff quite effectively, should overlapping customers exist. However, the Defendants have not provided a Real ID OIRP customer list, revenue associated with such customers, or the overall financial statements for the Real ID OIRP. Further, information produced on the Defendants' revenue, costs, and

---

[5] Plaintiff Adstra, LLC's Second Request for the Production of Documents to Defendants Kinesso, LLC and Acxiom, LLC, dated June 24, 2024; Plaintiff Adstra, LLC's Third Request for Production of Documents to Defendants Kinesso, LLC and Acxiom, LLC, dated September 11, 2024.

forecasts would be used to determine any gains the Defendants inappropriately enjoyed as a result of the trade secret theft. However, again, this information has not yet been produced.

11. The receipt and analysis of the Unavailable Discovery, or other discovery, may alter my damages calculations. Thus, I reserve the right to supplement and/or amend my opinions in this matter as necessary in response to additional documents or information that may be made available for my review or any new or updated views as set forth by an expert for the Defendants.

### III.   BACKGROUND

*Parties*

12. *Adstra, LLC. ("Adstra").* Adstra provides data and identity resolution products and services to its customers.[6] Its customers include marketing and advertising companies and omnichannel marketers such as financial services and retail companies.[7] Adstra most closely aligns under the NAICS code 519290 - Web Search Portals and All Other Information Services or NAICS code 519130 – Internet Publishing and Broadcasting and Web Search Portals.[8] These industries include companies operating websites that use a search engine to generate and maintain extensive databases of Internet addresses and content in an easily searchable format.[9] [10]

13. *ALC, LLC ("ALC").* ALC was the predecessor company to Adstra.[11] It was founded in 1978 "as a provider of data services to direct marketers."[12] ALC was rebranded as Adstra in June 2020.[13]

14. *Acxiom, LLC ("Acxiom").* Acxiom is a company that provides data-driven consulting and marketing solutions built on an AI-powered data and identity foundation.[14] Like Adstra, Acxiom also aligns under the NAICS codes 519290 and 519130.[15] Acxiom is owned by

---

[6] https://adstradata.com/about/.
[7] ADSTRA_0020957 [Adstra Rev by Client 2022-2024].
[8] Per discussion with Adstra Senior Management on October 2, 10, 21, and 22, 2024.
[9] https://www.naics.com/naics-code-description/?v=2022&code=519290.
[10] https://www.ibisworld.com/classifications/naics/519130/internet-publishing-and-broadcasting-and-web-search-portals/.
[11] ADSTRA_0020758 - 776 [ALC Parent, LLC and Subsidiaries Consolidated Financial Statements for the years ended December 31, 2020 and 2019] at 766.
[12] https://adstradata.com/blog/meet-alc-the-data-broker-you-probably-didnt-know-existed-yet/.
[13] ADSTRA_0020758 - 776 [ALC Parent, LLC and Subsidiaries Consolidated Financial Statements for the years ended December 31, 2020 and 2019] at 766.
[14] https://www.acxiom.com/about-us/.
[15] https://www.naics.com/naics-code-description/?v=2022&code=519290.