UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------:x
                                                                                                     :

ADSTRA, LLC,

                                                                                                     :

                   Plaintiff,

                                                                                                           :

                - against -                 :     Civil Action No. 1:24-cv-02639-LJL

                                                                                 :

KINESSO, LLC and ACXIOM, LLC,

                                                                               :

                   Defendants.

------------------------------------------------------------:x

# PLAINTIFF ADSTRA, LLC'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS PARTIAL MOTION FOR RECONSIDERATION

                                                       AGUILAR BENTLEY LLC
                                                       5 Penn Plaza, 19th Floor
                                                       New York, NY 10001
                                                       212-835-1521

                                                       *Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT ...................................................................................................................... 2
   I.   Standard for Reconsideration .................................................................................. 2
   II.  Reconsideration of Adstra's Motion Is Necessary to "Prevent Manifest Injustice" ............ 2
       A.  The Order Overlooks the Fact that the Discovery Dispute Did Not Arise Until
           September 27, 2024. ............................................................................................. 2
       B.  Adstra's Requests Are Proportionate to the Needs of the Case. ....................... 6
CONCLUSION ..................................................................................................................... 9

**PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 60(a) and Local Civil Rule 6.3, Plaintiff Adstra, LLC ("Adstra") respectfully submits this memorandum in support of its Partial Motion for Reconsideration ("Motion") of the Court's November 12, 2024 Order ("Order") denying Adstra's motion to compel Defendants' compliance with its discovery requests. ([ECF 81.](#)) In particular, Adstra had moved the Court pursuant to an Order to Show Cause requesting that the Court compel Defendants to produce documents in response to Request Nos. 1, 2, 10, and 20 in Adstra's Second Set of Requests for Production, served on June 24, 2024 (the "June Document Requests"). The Order held that Adstra "could in August have moved to compel further production" based on Defendants' responses to the June Document Requests, which were served on August 16, 2024 (the "August Written Responses"). (*Id.* at 4.)

Adstra respectfully believes that its motion for reconsideration is justified because, in finding Adstra's motion untimely, the Court overlooked the fact that the discovery dispute underlying Adstra's motion *did not arise* until September 27, 2024, when Defendants refused to supplement their production to include documents they had already agreed to produce. Adstra raised these deficiencies as soon as possible after reviewing Defendants' production (which did not begin until September 16) and brought its motion promptly after conferring with Defendants to try and resolve the dispute without burdening the Court, as required by this Court's rules. [Hon. Lewis J. Liman, Individual Practices in Civil Cases](#) 4(C).

Furthermore, the June Document Requests seek documents critical to Adstra's claims, and Defendants' failure to produce them has enabled their experts to make new, untrue factual assertions in their depositions while Plaintiff's expert raises an important new fact. Adstra submits that reconsideration of the Order is thus necessary to prevent manifest injustice to Adstra.

1

# ARGUMENT

## I. Standard for Reconsideration

Federal Rule of Civil Procedure 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, No. 18-cv-1774 (LJL), 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." *Shrader v. CSX Transp.*, No. 94-CV-34S, 1994 WL 721364, at *1 (W.D.N.Y. Dec. 7, 1994), *aff'd*, 70 F.3d 255, 257 (2d Cir. 1995) (granting reconsideration of motion to dismiss upon being presented with data that "were not brought to the Court's attention in the original submissions.").

## II. Reconsideration of Adstra's Motion Is Necessary to "Prevent Manifest Injustice"

### A. The Order Overlooks the Fact that the Discovery Dispute Did Not Arise Until September 27, 2024.

Adstra respectfully submits that, in finding its motion to compel untimely as to the June Requests, the Court overlooked this salient fact: the discovery dispute over documents that Defendants agreed to produce did not arise until September 27th, 2024, and Adstra therefore *could not* have moved to compel in August, as the Order states. (ECF 81, at 4.)

Defendants agreed to produce certain categories of documents in response to June Request Nos. 1, 2, 10, and 20 (the "Agreed Documents"). In the August Written Responses, Defendants

stated: "Defendants are **agreeable** to produce non-privileged documents, if any, sufficient to reflect any use of Adstra Data in connection with the build of the Reference Graph or Derived Data" (Request No. 2); "Defendants are **agreeable** to produce non-privileged documents, if any, sufficient to reflect material communications concerning the removal of Adstra Data from any build(s) of the Reference Graph, Real ID and/or Visitor Insights" (Request No. 10); and "Defendants are **agreeable** to produce non-privileged documents, if any, sufficient to reflect the 'sequestering' of Adstra Data as referenced at the Acxiom 30(b)(6) Deposition." (Request No. 20) (ECF 68-4, at 7, 12-13, 20) (emphasis added). And although Defendants initially objected to Request No. 1 in their August Written Responses, they agreed in subsequent correspondence to produce certain documents responsive to this request (and even claimed that they had). (*See*, *e.g.*, ECF 68-18 (claiming "Defendants produced documents sufficient to reflect revenue received from the sale of the Real ID referential graph."))

As to the Agreed Documents, Adstra's motion to compel production would have been premature before Adstra had reviewed the documents actually produced by Defendants. The deficiencies in Defendants' production did not (and could not have) become apparent until Defendants began their production on September 16, 2024, only a week before the close of fact discovery and *after* 8 of 10 depositions had occurred. (ECF 68 ¶ 42.)

On September 20, 2024, only four days after Defendants' document production began, Adstra communicated to Defendants its belief that their production did not, in fact, contain the Agreed Documents and requested that they supplement their production. (*Id.* at ¶ 44.)

On September 27, 2024, Defendants responded to Adstra, taking the position that the documents they produced were sufficient (*Id.* at ¶¶ 42, 50; ECF 68-14.) Accordingly, the discovery dispute underlying Adstra's motion to compel ***did not arise until September 27, 2024***, as Adstra

3

*could not* have moved to compel the production of the Agreed Documents before Defendants refused to provide them. This fact was overlooked by the Court when it held that "Plaintiff could in August have moved to compel further production." (ECF 81 at 4.)

Only four days later, Adstra met and conferred with Defendants in a good-faith attempt to resolve this newly arisen dispute (ECF 68 ¶ 52), as required by federal and this Court's rules prior to bringing a motion to compel. *See* Fed. R. Civ. P. 37(a)(1); Hon. Lewis J. Liman, Individual Practices in Civil Cases 4(C). On October 7, 2024, Defendants stated that they were "agreeable to providing" additional revenue information in response to Request No. 1, and more significantly, wanted to continue discussions over the dispute, stating they "are available to discuss a means of resolving" the dispute over Request No. 20. (ECF 68-18.) Defendants continued to negotiate until October 9, with Defendants agreeing to "further disclosure" of revenue documents. (ECF 68-21.) These discussions were necessary in order for Adstra to bring its motion to compel and served to make small but meaningful compromises between the Parties in order to reduce areas of disagreement to be resolved by the motion. It is evident that the discovery dispute was premature for the Court while these discussions continued. *Crichlow v. Fischer*, 15-CV-6252-EAW-JWF, 2018 WL 941752 at *2 (W.D.N.Y. Feb. 16, 2018) (finding motion for discovery premature where non-moving party "agrees [requested document] will be provided to plaintiff"); *see also Bethea v. City of N.Y.*, 16-CV-2522 (NGG) (SMG), 2017 WL 979030 at *1 n.1 (E.D.N.Y. Mar. 13, 2017).

Adstra promptly filed its motion to compel on October 11, 2024, only two days after concluding its discussions with Defendants. (ECF 65.)

Adstra's motion to compel was predicated on Defendants' failure to produce the Agreed Documents, not on the objections posed by Defendants in their August Written Responses.[1] This is evident from the fact that Adstra's motion highlights these deficiencies by stating each category of Agreed Documents, followed by a summary of documents Adstra believes to be missing from their production. For example, regarding June Document Request No. 20, Adstra noted that Defendants had agreed to produce documents "sufficient to reflect the 'sequestering' of Adstra Data" and documents "sufficient to reflect access by any Acxiom or Kinesso employees to the Adstra Data that was sequestered." (ECF 66 at 17.) However, Adstra predicated the relief it sought *not* on a refusal to produce these documents – indeed, there was no such refusal – but rather, on the assertion that "**Defendants' productions have not included responsive documents**, other than a scant few documents produced during expedited discovery."[2] (*Id.* at 17 (emphasis added).) Similarly, regarding Request Nos. 2 and 10, Adstra noted that Defendants had agreed to produce documents "sufficient to reflect any use of Adstra Data in connection with the build of the Reference Graph or Derived Data" and "sufficient to reflect material communications concerning the removal of Adstra Data from any build(s) of the Reference Graph, Real ID and/or Visitor Insights" but predicated its motion on the assertion that "**Defendants have produced only a small number of emails and messages** that discuss the use of Adstra data in graph builds at a high level (s*ee*, *e.g.*, *id.* Ex. 37) and a small number of emails regarding purging the data (*see, e.g., id.* Ex. 34)." (*Id.* at 13 (emphasis added).)

---

[1] Although Adstra sought an order compelling Defendants to provide responses to the full scope of the June Document Requests, the vast majority of its motion to compel concerns Defendants' failure to produce documents as agreed in the August Written Responses and other correspondence. (ECF 66.)

[2] As is clear from the fact that Plaintiff requested, and Defendants did not produce, access logs – such scant production did not reflect who had access to the data and whether it was accessed. (ECF 66 at 16.)

5

Had the Court considered that the dispute actually arose in September 27, 2024, not in August, it "might reasonably have altered the result reached by the court" that Adstra's motion to compel was untimely as to the June Document Requests. *Shrader*, 1994 WL 721364 at *1. Accordingly, it would be "clear error" and "manifest injustice" to deny Adstra's motion on the ground that Adstra "could in August have moved to compel further production" as to the June Requests. (ECF 81 at 4.) *Spin Master*, 2020 WL 535041, at *1.

### B. Adstra's Requests Are Proportionate to the Needs of the Case.

The Order also held that Adstra's "requests for documents . . . – even if entertained on the merits – are disproportionate to the needs of the case" and that "[t]he documents that have been produced are sufficient to demonstrate how Defendants have used Plaintiff's data" and "Plaintiff has not shown any deficiency with respect to documents going to the issue of damages." (ECF 81 at 5-6.) Adstra respectfully disagrees, and asks the Court to reconsider its findings "to prevent [the] manifest injustice" to Adstra that would be caused by Defendants' failure to produce the Agreed Documents. *Spin Master Ltd.*, 2020 WL 5350541, at *1.

As Adstra's technical expert, Erik Laykin, stated in his report and testified at his deposition on November 21, 2024, Defendants' productions lack documents that would enable him to provide additional clarity and make additional conclusions regarding Adstra's claims. (October 22, 2024 Expert Report of Erik Laykin, excerpt attached as **Ex. 1** to the Declaration of Anne Burton-Walsh, submitted herewith ("Burton-Walsh Decl.") ¶¶ 65-66; Rough Transcript of November 21, 2024 Deposition of Erik Laykin ("Laykin Rough Tr."), excerpt attached as **Ex. 2** to Burton-Walsh Decl.)[3] In particular, Defendants have *not* produced documents "sufficient to reflect any use of Adstra Data" because they have not produced any documents containing even basic technical

---

[3] The rough draft transcript of Mr. Laykin's deposition does not contain page or line numbers.

6

details, including, without limitation, the tools and programs that were used to extract, transform, and load the Adstra Data, the means by which Acxiom managed and reported such data, or production code releases for each event associated with use of the Adstra Data, nor have they provided information regarding their Real ID suite of products that would enable Adstra to determine which contain or are based in whole or in part on the Real ID reference graph that was admittedly built with Adstra Data. Such information is critical to understanding the extent of Acxiom's misuse of the Adstra Data and is properly included within the documents Defendants agreed to produce in response to Request No. 2. Notably, on November 14, 2024 (after Adstra's motion to compel had been briefed and decided), Defendants' own expert resisted answering basic questions at his deposition regarding ▮▮▮▮▮▮▮▮▮▮▮▮ (Rough Tr. of November 14, 2024 Deposition of Ron S. Schnell ("Schnell Rough Tr."), attached as **Ex. 3** to the Burton-Walsh Decl., at 135:19-138:3.)[4] Defendants' expert also admitted that ▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 3, at 137:2-138:3 (discussing ACXIOM000358); *see id.* 138:21-142:20; 144:3-19 ▮▮▮▮▮▮▮▮▮▮▮▮) Such answers mirror the testimony of Defendants' damages expert, who insisted that ▮▮▮▮▮▮▮▮▮▮▮▮ (Rough Transcript of the Deposition of Bala Dharan on November 15, 2024 ("Dharan Rough Tr."), excerpt attached as **Ex. 4** to the Burton-Walsh Decl., at 94:13-19, 173:10-17.)

7

███████████████████████████████████████████████

███████████████████████████ (*see id.* 38:14-16; 185:6-21, 188:11-189:2).

Defendants' damages expert could not answer questions regarding ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████ (*See* Ex. 4 at 43:22-44:2.)[5] Further, Plaintiff's damages expert stated in his report that he had requested but not received critical documents concerning Acxiom's Real ID revenues. (*See* Report of Christopher W. Young, attached as **Ex. 6** to the Burton-Walsh Declaration, at ¶¶ 9-10.) The "importance and relevance of [expert testimony] cannot be overstated when the subject matter of the litigation is as technical and complex as here." *Personalized Media Commc'ns, LLC v. Netflix Inc.*, No. 20-CV-3708 (JPC), 2021 WL 11709700, at *3 (S.D.N.Y. Jan. 12, 2021) (granting extension of discovery period to allow expert to review defendant's source code).

Defendants' production is likewise deficient with respect to documents going to damages. Defendants have clearly agreed to provide documents regarding revenue, and should not be permitted to produce a handful of documents without providing the full picture. In response to

---

[5] Defendants' damages expert underscores Defendants' truncated and misleading production of documents regarding revenue. Dr. Dharan admitted that his expert opinion is based only on the three contracts Defendants produced in this case as representing its only Real ID graph related revenue (Ex. 4 at 79:14-21), which defies logic (*see* ECF 66 at 1, 11-12). Dr. Dharan also testified that "AbiliTec," another identity reference graph, is "deeply embedded in Acxiom's service offerings to its customers and relates to the vast majority of Acxiom's revenues." (Report of Bala Dharan, Ph.D., attached as **Ex. 5** to the Burton-Walsh Decl., ¶ 33; Ex. 4 at 77:11-21, 80:19-81:8.) Yet Dr. Dharan did not know what Acxiom's revenues were or what percentage "a vast majority" corresponds to in this case. (*See* Ex. 4 at 75:14-18; 76:17-77:5.) Dr. Dharan only learned during his deposition from a website screenshot presented to him that Acxiom claims over 500 Real Identity clients, admitted that he had not been aware of this fact, and had based his opinion on the three customers he was informed about but whose identities he did not learn. (*See id.* 58:12-60:17; 64:15-65:7.)

June Request No. 1, Defendants claim to have produced documents "sufficient to reflect revenue actually received from sales of Real ID." (ECF 66 at 11; ECF 68-18.) But despite the fact that Acxiom advertises over 500 Real ID customers on their website, Defendants have produced no marketing materials and virtually no revenue information, while claiming that a mere three (3) licensing agreements are sufficient to reflect revenue attributable to Real ID.[6] (ECF 68-22.) These documents are neither disproportionate to the needs of the case nor sufficiently produced by Defendants. In fact, this Court has recognized that "damages is one of the critical issues at trial." *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7677-LJL, 2022 WL 2063857, at *10 (S.D.N.Y. June 8, 2022) (denying motion to exclude late damages expert report despite "no substantial justification for the late service of that report or good explanation for the failure to provide notice of it within the time period permitted for expert discovery" where prejudice could be readily addressed.) Here, Adstra asks the Court to compel the production of critical revenue information needed to complete the analysis in its damages report, and any prejudice to Defendants can be addressed (though no prejudice has been claimed by Defendants over the short course of this litigation thus far). To do otherwise would result in "manifest injustice."

## CONCLUSION

For the foregoing reasons, Plaintiff Adstra, LLC respectfully requests the Court reconsider its November 12 Order and order Defendants to produce, as agreed in their August Written Responses and subsequent correspondence:

---

[6] Despite Defendants' attempt to distinguish between revenue attributable to the Real ID referential graph from the entire Real ID suite of products (ECF 74 at 15), Defendants agreed to and claimed to have produced documents "sufficient to reflect revenue actually received from sales of Real ID," not just the Real ID referential graph. (*See* ECF 66, at 11.) Furthermore, the three agreements that they have produced are not, in fact, specific to the Real ID referential graph but more broadly concern Real Identity services and software, further evidencing Defendants' cherry-picking of revenue documents. (ECF 68-22.)

(1) Documents sufficient to reflect "revenue actually received from sales of Real ID," in response to June Request No. 1;

(2) Documents sufficient to reflect "any use of Adstra Data in connection with the build of the Reference Graph or Derived Data," in response to June Request No. 2;

(3) Non-privileged documents sufficient to reflect "material communications concerning the removal of Adstra Data from any build(s) of the Reference Graph, Real ID and/or Visitor Insights," in response to June Request No. 10; and

(4) Non-privileged documents sufficient to reflect "the 'sequestering' of Adstra Data as referenced at the Acxiom 30(b)(6) Deposition" in response to June Request No. 20.

Dated: November 26, 2024

                                              Respectfully Submitted,
                                              *s/ Anne Burton-Walsh*
                                              Anne Burton-Walsh

                                              Anne Burton-Walsh
                                              Anna Aguilar
                                              Aguilar Bentley LLC
                                              5 Penn Plaza, 19th Floor
                                              New York, New York 10001
                                              Tel. No. 212-835-1521
                                              Fax No. 646-924-0599
                                              aburtonwalsh@aguilarbentley.com
                                              aaguilar@aguilarbentley.com

                                              *Attorneys for Plaintiff Adstra, LLC*