UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADSTRA, LLC,<br><br>             Plaintiff,<br><br>  v.<br><br>KINESSO, LLC and ACXIOM, LLC,<br><br>             Defendants. | Case No.: 1:24-cv-02639-LJL |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ADSTRA, LLC'S MOTION FOR PARTIAL RECONSIDERATION**

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT ............................................................................................................... 2

    I.      Overview of Discovery Timeline.............................................................................. 2
    II.     Adstra Falls Well Short of Meeting the Reconsideration Standard ........................ 3
    III.    Adstra Unduly Delayed Raising the Underlying Discovery Matters...................... 4
    IV.    Defendants Have Already Provided More than Sufficient Discovery
           Concerning the Subject Requests............................................................................ 6

           A.      Documents Sufficient to Reflect Revenue Actually Received from
                  Sales of Real ID [September Request No. 1]............................................ 7
           B.      Documents Sufficient to Reflect the Any Use of Adstra Data [June
                  Request No. 2] ......................................................................................... 8
           C.      Non-Privileged Documents Sufficient to Reflect "Material
                  Communications" Concerning the Removal of Adstra Data from
                  the Reference graph or Visitor Insights [June request No 10].................... 9
           D.      Non-Privileged Documents Sufficient to Reflect the Sequestering
                  of Adstra Data [June Request No. 20] ..................................................... 10

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) .................................................................................................3

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ...........................................................................................................4

*Corpac v. Rubin & Rothman*,
  10 F. Supp. 3d 349 (E.D.N.Y. 2013) ..................................................................................4

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000) .................................................................................4

*Ortega v. Mutt*,
  2017 WL 1968296 (S.D.N.Y. May 11, 2017) ....................................................................3

*Shrader v. CSX Transp.*,
  1994 WL 721364 (W.D.N.Y. Dec. 7, 1994) .......................................................................4

*Spin Master Ltd. v. 158*,
  2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) ......................................................................4

*United States Sec. & Exch. Comm'n v. Collector's Coffee In*c.,
  464 F. Supp. 3d 665 (S.D.N.Y. 2020) .................................................................................3

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) .............................................................................................4

Defendants Kinesso, LLC ("Kinesso") and Acxiom LLC ("Acxiom") (collectively, "Defendants") submit this memorandum of law in opposition to Plaintiff Adstra, LLC's ("Adstra") motion (the "Motion") for "partial" reconsideration (ECF 90, "Pl. Mem.") of the Court's Order dated November 12, 2024 ("Order"), which denied Adstra's motion to compel further responses to certain discovery requests. (ECF 81).[1]

## PRELIMINARY STATEMENT

Desperation is not justification for additional discovery under the Federal Rules of Civil Procedure, let alone for reconsideration of an adverse discovery ruling. But desperation is the apparent explanation for Adstra's reconsideration application. As a substitute for any legitimate basis, Adstra bases its Motion on two principal, significant distortions:

First, Adstra pretends as if the discovery disputes it seeks to revisit only arose at the very end of fact discovery. That is false. At the onset of the case, Adstra was granted the outer limits of the presumptive four-month time frame for fact discovery allotted under the Court's Individual Practice Rules. It was Adstra's obligation and then its abysmal failure to responsibly manage the discovery process to avoid any claimed eleventh-hour confusion. Instead, Adstra deferred deadlines; ignored Defendants' invitation to meet and confer; and refused to curtail grossly expansive, intrusive discovery requests. Even more critically, Adstra focuses on discovery matters for which disputes crystalized not, as it now disingenuously asserts, at the end of discovery, but weeks before the discovery deadline. After receiving expedited discovery in June 2024 in aid of a preliminary injunction ("PI") application, Adstra realized enough to abort that application and it simply stopped pursuing the case seriously. Instead, Adstra essentially went dark until it belatedly sought to backfill only when facing the prospect of expert analyses and dispositive motions.

---

[1] Below, "Pl. Mem." refers to Adstra's Memorandum of Law in Support of its Motion for Partial Reconsideration (ECF No. 90).

1

Second, even aside from an utter lack of diligence, the very discovery Adstra claims it requires already has been provided. The fact that Adstra does not, to say the least, like the discovery record because it refutes its case, provides no grounds for Adstra to obtain still more and impose greater burdens on Defendants. Specifically, Defendants have already produced documents, as well as provided deposition testimony, reflecting the under $2 million in total revenue received by Acxiom under the three licensing agreements covering the identity graph developed with Adstra Data as one of a multitude of inputs, even though the Adstra Data was removed before the graph was operationalized with any of its customers. No other product or service relating to the Adstra Data have been sold by Acxiom. In addition, documents and testimony already provided establish the Adstra Data was used by Kinesso to develop the graph and a separate product, known as crosswalks, but Defendants ceased any use of the data in mid-April 2024 after learning of the litigation as a means to put these matters to rest. The record clearly reflects both the removal and the sequestering of the Adstra Data at the outset of the litigation.

The discovery provided by Defendants covering all relevant areas stands uncontroverted, with no reason identified for extracting yet more documents. Particularly at this belated stage, enough is more than enough. Accordingly, Adstra's Motion should be flatly rejected in its entirety.

## LEGAL ARGUMENT

### I. Overview of Discovery Timeline

To correct Adstra's mischaracterization of the discovery record, the following chronology reflects (a) Adstra's lackadaisical approach after expedited PI discovery came up wholly empty; and (b) the identification well before the close of fact discovery of the discovery disputes now subject to Adstra's belated motion practice:

- **June 24:** Parties serve Document Requests ("June Requests"), which Adstra adjourned from June 13.

- **Aug. 16**: Parties respond to June Requests, which Adstra adjourned from July 24; Defendants propose to meet and confer. Defendants agree to produce limited documents.

- **Sept. 11**: Adstra serves Third Request for Production of Documents seeking revenue information for the first time and designating September 20, the last day of fact discovery as deadline to respond.

- **Sept. 13**: Adstra first engages in Meet and Confer on June Requests.

- **Sept. 20**: Fact Discovery deadline set at the outermost presumptive date per Court rules.

- **Sept. 20**: Adstra impermissibly serves Request for Inspection of Documents and Objects, originally requiring Defendants' response in 14 days; later identifying proper 30-day time frame.

- **Sept. 29**: Adstra retains Erik Laykin as a purported technical expert.

- **Oct. 8**: After expert retention (and post-fact discovery), Adstra for the first time refashions previous requests to identify (among other things) "access logs" and "code releases" – which Defendants advised they do not possess anyhow.

- **Oct. 11**: Adstra moves to compel three weeks after close of fact discovery (ECF No. 62), which Court denied (ECF No. 81).

- **Nov. 20**: Post-Discovery Status Conference, where Adstra fails to disclose intention to move for reconsideration of Order from 8 days earlier.

- **Nov. 26**: Adstra waits the full two weeks to move for reconsideration of Order.

## II. Adstra Falls Well Short of Meeting the Reconsideration Standard

As displeased with a ruling as a party may be, its desire for a second bite at the apple is not grounds for the disfavored relief of reconsideration. *United States Sec. & Exch. Comm'n v. Collector's Coffee In*c., 464 F. Supp. 3d 665, 667 (S.D.N.Y. 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."); *see also Ortega v. Mutt*, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) ("Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly.").

3

A party petitioning for reconsideration must show that "there was an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). For purposes of a motion for reconsideration, "manifest injustice" refers to "an error committed by the trial court that is direct, obvious, and observable." *Corpac v. Rubin & Rothman*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013). The Supreme Court has cautioned that regardless of the basis for a motion for reconsideration, Courts should be "loath" to revisit its prior decisions "in the absence of <u>extraordinary circumstances</u>." *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (emphasis added). Adstra's Motion entirely fails to establish the existence of such circumstances. Far from any "manifest injustice" or "extraordinary circumstances," Adstra did not even raise its plan to seek reconsideration of the Order at the status conference six days before it filed its motion (on the last date allowed under the rules).[2]

### III. Adstra Unduly Delayed Raising the Underlying Discovery Matters

In denying Adstra's motion to compel for which reconsideration is sought, the Court recognized both that (a) the motion was untimely because it could have been brought in August before the close of the discovery period; and (b) the underlying requests were facially overbroad. Order at 4-5. Without any proper tailoring, Adstra's motion to compel sought expansive categories covering "all documents" relating to the June Requests. (ECF No. 62 at 2-3) (seeking "All Documents and Communications concerning the Reference Graph…;" "All Documents and Communications concerning removal of Adstra's Data…"; "All documents and communications

---

[2] None of the cases which Adstra relies on are remotely on point. *See Spin Master Ltd. v. 158*, 2020 WL 5350541, at *2 (S.D.N.Y. Sept. 4, 2020) (reconsideration motion granted in part and denied in part where new evidence relating to personal jurisdiction was discovered); *Shrader v. CSX Transp.*, 1994 WL 721364, at *1 (W.D.N.Y. Dec. 7, 1994) (reconsideration motion granted where controlling caselaw, in conjunction with legislative history, made it clear that motion to dismiss was meritorious). As *Spin Master Ltd.* itself holds, reconsideration is "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." 2020 WL 5350541, at *1 (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

concerning the sequestering of Adstra Data…"). By its present Motion, Adstra covertly does not seek reconsideration of its initial motion but significantly alters the requested relief, as it now seeks "documents sufficient to reflect" each of the categories of documents for which it previously sought "all documents." Pl. Mem. at 10. This change is made clear by Adstra's inclusion of the defined term "Agreed Documents" in its motion for reconsideration, which appeared nowhere in its original motion to compel. Pl. Mem. at 2, 3, 4, 5, and 6. Not only is that change disingenuous, but it reflects a tacit admission by Adstra that the Court's prior Order regarding both the ability to bring the motion in August and the overbreadth of the requests is undeniably correct. But as detailed further below, Defendants in fact already produced documents (and provided deposition testimony) "sufficient to reflect" the requested information within reasonable scope.

Adstra further contends that the discovery disputes at issue did not arise until September 27, 2024, and that the Court overlooked this "fact" in rejecting its initial motion as untimely. Pl. Mem. at 2. However, as this Court recognized in its Order, the dispute as to three of the four requests at issue (the fourth regarding revenue not having been made until September 11 and which was facially untimely) was actually ripe on August 16, 2024, when Defendants served their responses to the June Requests – the responses which Adstra requested be deferred. Contrary to Adstra's assertion, Defendants did not in September "refuse to supplement their production to include documents they had already agreed to produce." Pl. Mem. at 1. Rather, Adstra, after the discovery deadline, revised and rewrote its earlier requests to seek categories of documents which it (often incorrectly) asserts that Defendants possess.

In fact, the timeline of events makes clear that Adstra subtly and improperly refashioned and broadened its discovery requests in October 2024, <u>after</u> retaining its expert witness Erik Laykin on September 29. Adstra sent letters to Defendants on September 10, 20, and 27, none of which

5

made any reference to the data extraction tools and programs, access logs, and code releases which it now seeks. (ECF No. 90 at 6-7). However, on October 8, 2024, <u>after</u> the close of fact discovery and after retaining Mr. Laykin, Adstra, for the first time, stated its belief that Defendants "have access logs that it the location(s) where the data resides," as well as "production code releases" for extracting, transforming, and loading the Adstra data, as well as its removal. (ECF 67-19). None of Adstra's communications prior to the close of fact discovery made any reference to those items.

Adstra's reliance on cherry-picked quotes from post-fact discovery expert depositions and reports do not save its motion. <u>First</u>, Adstra's expert reports were served October 6, prior to its motion to compel. Any arguments based on those reports not previously made are waived. <u>Second</u>, Defendants' experts were rebutting the claims made by Adstra's experts, considering the same records as Adstra's experts. As explained in Defendants' opposition to the motion to compel, "Defendants have not provided, and do not intend to provide access to those materials to their expert." (ECF No. 72 at 21). <u>Third</u>, Adstra improperly attempts to convert Defendants' experts into fact witnesses. While Adstra states that it asked Defendants' damages expert about the relationship between the Real ID reference graph and the broader suite of products, it omits that it did not ask any of the six fact witnesses it deposed the same question. Pl. Mem. at 8.

IV. **Defendants Have Already Provided More than Sufficient Discovery Concerning the Subject Requests**

Adstra's Motion identifies four discovery requests for which it seeks additional information. However, Adstra has already received ample responsive information to these four requests, in the form of both produced documents and uncontroverted deposition testimony. As set forth in the accompanying Declaration of Daniel Friedman dated December 4, 2024 ("Friedman Decl."), Defendants provided documents and testimony sufficient to more than fully respond to the below requests:

### A. Documents Sufficient to Reflect Revenue Actually Received from Sales of Real ID [September Request No. 1]

Adstra again attempts to distort the discovery record by claiming that it sought revenue in the June Requests. But it was not until the September Requests – which are expressly <u>not</u> part of this Motion seeking reconsideration – that Adstra sought "Documents sufficient to show Acxiom's annual and/or forecasted revenue for 2021, 2022, 2023 and projected revenue for 2024 and 2025, including, without limitation, revenue or forecasted revenue generated by and/or attributable to any reference graph offered by Acxiom, including Real ID, the ADAPT team and/or the Connectors team." (ECF 68-7 at Request No. 1). By contrast, June Request No. 1 sought "All Documents and Communications concerning the creation of Real ID, including but not limited to marketing materials used for Real ID and any reference to the product suite." (ECF 68-2 at Request No. 1). In fact, as Defendants already explained to Adstra in a letter dated October 7 (ECF 68-22):

> **Plaintiff's Second Request No. 1 and Third Request No. 1**: Defendants produced documents sufficient to reflect revenue received from the sale of the Real ID referential graph. You have the documents showing the actual Real ID revenue from the subject product. Your [October 5] letter does not indicate how or why the identified documents "do not sufficiently comply with these requests," nor explain what Plaintiff's Second Request No. 1, which concerns the creation of Real ID, even has to do with revenue. However, to resolve this matter, we are agreeable to providing information sufficient to reflect any Acxiom revenue projections for the Real ID referential graph [which Defendants subsequently produced].[3]

That alone warrants rejection of Adstra's motion for reconsideration.

As the record shows, Kinesso used Adstra Data as one of thirty data inputs for the development of its Omnichannel Resolution Identify Product ("OIRP") or "referential graph," which originally was known as "Kii" and then rebranded by Acxiom as "Real ID in the Cloud"

---

[3] As made clear in that letter, Defendants agreed to produce (and <u>did</u> produce) documents sufficient to reflect revenue from the Real ID referential graph – not revenue from a preexisting, broader suite of products unrelated to Adstra Data. Any suggestion that a shorthand reference simply to Real ID (in response to September Request No. 1) in the October 1 letter (ECF 68-18) meant something more is not only disingenuous but rebutted/clarified in the next letter.

(the "Real ID Graph") in October 2023. *See* Friedman Decl. Ex. 1, Deposition of Kyle Hollaway at 72:19-24; Decl. of Todd Thomas in Opposition to TRO (ECF No. 25) at ¶ 30. As acknowledged in Adstra's Motion, Defendants have <u>already provided discovery</u> quantifying all revenue for the Real ID Graph and produced the three contracts relating to the Real ID Graph and related documents such as invoices. Pl. Mem. at 8, n.5.[4]

If, by sleight of hand, Defendants actually seek revenue related not only to the Real ID Graph but <u>all</u> products or services relating to the broader "Real ID" brand, such documents are well outside the scope of permissible discovery. The overall Real ID brand predates the Real ID Graph by four years and includes various products which have no connection to Adstra or its data, and thus are extraneous to this case. The distinction between the Real ID Graph and the broader Real ID brand has been made amply clear throughout the course of discovery,[5] with numerous fact witnesses explaining that the Real ID brand encompasses a range of products which have no connection to the Real ID Graph which was introduced in October 2023. Indeed, Adstra itself has acknowledged the distinction between the Real ID Graph and the Real ID brand, repeatedly asking Defendants' witnesses questions about the "Real ID brand" and "suite of Real ID products" as distinct from the Real ID Graph.[6] Adstra's current attempt to conflate the two is wholly meritless.

B. <u>Documents Sufficient to Reflect the Any Use of Adstra Data [June Request No. 2]</u>

As Adstra's Motion concedes, Defendants have already produced documents responsive to its Request No. 2 concerning use (and non-use) of the Adstra Data by Defendants. Pl. Mem. at 5.

---

[4] *See also* Decl. of Hal Shaftel (ECF No. 73) at ¶ 16 (confirming production of contracts).
[5] *See* Friedman Decl. Ex. 2, Deposition of Veena Xavier at 26:3-9 (explaining that Real ID is a "suite of products" and a brand which incorporates "multiple products," including but not limited to the referential graph); Ex. 4, Deposition of Eugene Becker at 95:11-15 (explaining that "Real ID is a brand" which existed prior to the launch of the Reference Graph in October 2023); Ex. 1, Deposition of Kyle Hollaway 25:21-23 (explaining that Real ID has existed for four years "as a product suite"); Ex. 3, Deposition of Bryan Donovan at 50:10-12 (characterizing the reference graph as a "product offering" which is merely one part of the broader Real ID brand).
[6] *See, e.g.*, Friedman Decl. Ex. 1, Deposition of Kyle Hollaway at 31:6-7 (Adstra's counsel asking about the Visitor Insight product in relation to "the suite of Real ID products").

8

Indeed, Adstra admits that the record already contains "numerous witnesses and documents" discussing the use of Adstra Data in the Real ID Graph. *Id*. at 8. (emphasis added). Yet, paradoxically (and erroneously), Adstra also contends that Defendants have produced "only a small number of emails and messages that discuss the use of Adstra data in graph builds at a high level." *Id*. Simply put, Adstra cannot have it both ways, as it already received sufficient discovery.

Adstra's vague claim that there is a trove of unproduced "technical" documents relating to the use of Adstra Data, whatever that means, is mere speculation. Even more significantly, Adstra does not (and cannot) explain what additional "technical" documents are truly relevant and for what purpose given the actual issues in genuine dispute. Such an unsupported, vague request does not give rise to a bona fide discovery dispute, let alone a "manifest injustice" sufficient to warrant reconsideration of the Court's Order. Rather, the record clearly shows that Defendants have produced precisely what they agreed to produce under June Request No. 2, including emails which discuss the use of Adstra Data alongside other sources in earlier graph builds.

C. Non-Privileged Documents Sufficient to Reflect "Material Communications" Concerning the Removal of Adstra Data from the Reference graph or Visitor Insights [June request No 10]

Adstra's claim that Defendants have not produced "Material Communications" concerning the removal of Adstra Data from the Real ID Graph is belied by the record. Defendants have produced numerous emails[7] and Slack threads,[8] and multiple witnesses have offered testimony,[9] all confirming that a full purge of Adstra Data occurred in April 2024, and that Adstra Data is not part of any product offered by Defendants. Adstra's contention that Defendants have only

---

[7] *See, e.g.* Friedman Decl. Ex. 5, ACXIOM000989; Decl. of Hal Shaftel (ECF No. 73) Ex. 13, ACXIOM003243 (emails confirming April purge).
[8] *See* Friedman Decl. Ex. 6, ACXIOM002711 (Slack thread confirming April purge).
[9] *See* Decl. of Hal Shaftel (ECF No. 73) Ex. 7, Deposition of Veena Xavier at 71:8-24 (explaining the removal and sequestration of the data to an S3 bucket); Ex. 8, Deposition of Kyle Hollaway at 192:3-5 (noting that the 2.26 graph version and crosswalk has been fully sequestered); Ex. 10, Deposition of Todd Thomas at 51:16-19 (confirming removal of Adstra data).

produced "a small number of emails regarding purging the data" is therefore wholly at odds with the record. Pl. Mem. at 5.

        D.      <u>Non-Privileged Documents Sufficient to Reflect the Sequestering of Adstra Data [June Request No. 20]</u>

Adstra's claim that Defendants have not produced sufficient documents to reflect the sequestration of Adstra Data which occurred after the April 2024 purge is, again, wholly at odds with the factual record, for precisely the same reasons as its claims related to the purge of Adstra Data. As multiple witnesses testified, the Adstra Data was sequestered immediately after being purged[10] and has not been accessed since.[11] In particular, Adstra claims that Defendants possess, but have failed to produce, "access logs" relating to the sequestered data. *Id.* at n.2. As Defendants have unambiguously stated, such logs <u>do not exist</u> and thus Defendants are incapable of producing them. ECF No. 72 at 23. Adstra has cited to no document, transcript, or pleading which provides <u>any</u> support for its belief that Adstra Data was not sequestered immediately after the April 2024 purge, or that Defendants possess access logs which contradict the testimony of multiple witnesses. As Defendants previously have explained, "Adstra is not entitled to additional discovery (even if such information existed) merely because it refuses to accept the sworn testimony of multiple witnesses and documentary evidence confirming the sequestration." *Id.* at 23.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety.

---

[10] *See Id.,* Ex. 8, Deposition of Kyle Hollaway at 192: 5 (confirming sequestration).
[11] *See Id.,* Ex. 7, Deposition of Veena Xavier at 71:24 (confirming sequestered data has not been accessed).

Dated: New York, New York
December 4, 2024

**GREENBERG TRAURIG, LLP**

By:   /s/ *Hal S. Shaftel*
Hal S. Shaftel
Daniel Friedman
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
shaftelh@gtlaw.com
daniel.friedman@gtlaw.com

*Attorneys for Defendants Kinesso, LLC, and Acxiom, LLC*