```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/09/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
ADSTRA, LLC,                                                       :
                                                                   :
                              Plaintiff,                           :
                                                                   :    24-cv-2639 (LJL)
              -v-                                                  :
                                                                   :    MEMORANDUM AND
KINESSO, LLC, ACXIOM, LLC,                                         :        ORDER
                                                                   :
                              Defendants.                          :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Kinesso, LLC ("Kinesso") and Acxiom, LLC ("Acxiom" and, with Kinesso, "Defendants") move, pursuant to Federal Rule of Civil Procedure 54(d), for an award of attorneys' fees and costs. Dkt. No. 211. The motion is granted in part and denied in part.

**BACKGROUND**

For over a year, the Court has presided over what has been a hard-fought case between alleged commercial competitors. The case has involved a request for a temporary restraining order and then for a preliminary injunction, a motion to dismiss, extensive discovery disputes, and competing motions for summary judgment accompanied by motions in limine and *Daubert* motions to exclude expert testimony. Even before the Court issued its decision granting summary judgment to Defendants, there were over 200 entries filed on the docket.

Adstra is a New Jersey limited liability company that has built an omnichannel identity resolution product ("OIRP"), Conexa, that identifies consumers, addresses, or households across multiple media by linking together separate datasets relating to individual customers. Dkt. No. 203 at 2. On March 3, 2020, it entered into a Master Data Supply Agreement (the "MDSA") with Kinesso, which is a developer of marketing tools and a subsidiary of The Interpublic Group

of Companies ("IPG").  *Id.* at 3.  The MDSA contains general terms and conditions for the licensing of data by Adstra to Kinesso.  *Id.*  On November 27, 2023, Kinesso assigned to its affiliate Acxiom, which is also a subsidiary of IPG, all of its "rights, title and interests and duties, liabilities and obligations" under the MDSA.  Dkt. No. 103-5 § 1.

A dispute arose between the parties after Acxiom emailed Adstra a notice of non-renewal of the MDSA on November 28, 2023.  Dkt. No. 103-7.  On April 8, 2024, Adstra filed suit in this Court against Kinesso and Acxiom.  Dkt. No. 1.  Adstra alleged that Kinesso had breached the MDSA by assigning the MDSA to Acxiom without Adstra's consent and sharing data with Acxiom in violation of the MDSA's confidentiality provision.  *Id.* ¶¶ 117–124.  It also alleged that in the event the assignment to Acxiom was deemed valid, Acxiom had breached the MDSA by using the Adstra data in a manner that exceeded the scope of the license provided in the MDSA and its schedules.  *Id.* ¶¶ 124–125.  Adstra also brought claims against both Defendants under the Defend Trade Secrets Act ("DTSA"), *id.* ¶¶ 84–97, for common law misappropriation, *id.* ¶¶ 98–111, for unfair competition, *id.* ¶¶ 112–116, and for breach of the covenant of good faith and fair dealing implied in the MDSA, *id.* ¶¶ 143–151.  Adstra additionally alleged that Acxiom tortiously interfered with the MDSA agreement Adstra had with Kinesso, *id.* ¶¶ 134–142, that Acxiom breached a separate data processor agreement, *id.* ¶¶ 126–133, and that Acxiom breached the covenant of good faith and fair dealing implied in that agreement, *id.* ¶¶ 152–159.  As a defense to all of these claims, Defendants argued that Kinesso was permitted to share products developed using Adstra data with its affiliate Acxiom before the assignment of the MDSA and that Kinesso was permitted to assign the MDSA to Acxiom without obtaining Adstra's permission.  Dkt. No. 129 at 11–26.  Defendants thus contended that any access that Acxiom had to Adstra data and any use it made of that data was authorized and could not support

2

a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, or a violation of the DTSA or its New York common law counterparts. *Id.*

Ultimately, the parties filed competing motions for summary judgment. Dkt. Nos. 107, 128. On February 19, 2025, the Court issued its Opinion and Order granting summary judgment for Defendants and dismissing all of Adstra's claims. Dkt. No. 203; *Adstra, LLC v. Kinesso, LLC*, 2025 WL 552050 (S.D.N.Y. Feb. 19, 2025). Based on the unambiguous language of the MDSA, the Court ruled that Kinesso could assign the MDSA to Acxiom without obtaining Adstra's approval. Dkt. No. 203 at 23–34. That interpretation was also consistent with the limited parol evidence. *Id.* at 32–34. The Court also held that the access that Kinesso provided to Acxiom of the product that Kinesso developed with Adstra data was permitted by the terms of the MDSA. *Id.* at 35–37. Plaintiff did not identify any Adstra data provided by Kinesso to Acxiom prior to the November 2023 assignment of the MDSA. *Id.* at 38. The Court's "conclusion that Acxiom did not improperly use or possess the Adstra Data before the assignment, and that the assignment was valid[,] substantially resolve[d] all of Plaintiff's claims." *Id.* at 38.

The Clerk of Court entered judgment on February 27, 2025. Dkt. No. 205. Plaintiff filed a notice of appeal on March 4, 2025. Dkt. No. 210. Defendants filed this motion for attorneys' fees on March 11, 2025. Dkt. No. 211. Defendants also filed the declaration of their counsel, Hal S. Shaftel, and a memorandum of law in support of the motion. Dkt. Nos. 212–213. Adstra filed a memorandum of law in opposition to the motion for attorneys' fees on March 25, 2025. Dkt. No. 214. Defendants filed a reply memorandum of law and the supplemental declaration of Hal S. Shaftel on April 1, 2025. Dkt. Nos. 217–219.

## DISCUSSION

The Court has jurisdiction over an application for attorneys' fees filed during the pendency of an appeal. *See* Fed. R. Civ. P. 54(d)(2); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 2004 WL 856329, at *1 (S.D.N.Y. Apr. 20, 2004) ("[A]lthough a Notice of Appeal normally divests the district court of jurisdiction, a district court retains jurisdiction to decide the issue of attorneys' fees and other collateral matters notwithstanding a pending appeal.").

As a threshold matter, Adstra argues that because it has filed a notice of appeal, a ruling on Defendants' fee motion would be premature and the Court should defer ruling on the motion or deny it without prejudice until all issues on appeal have been resolved. Dkt. No. 214 at 1, 5–6. However, the Court concludes that it should decide Defendants' attorneys' fees motion now.

The Court has discretion to decide the motion for attorneys' fees during the pendency of the appeal or to defer ruling or deny the motion without prejudice until the appeal is resolved. *See* Fed. R. Civ. P. 54(d)(2) advisory committee note to 1993 amendment ("[T]he court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved."). A decision to defer ruling can serve the interests of judicial economy at the district court level, as the appellate court will necessarily be forced to address the merits of the Court's decision and its ruling "could potentially impact the Court's determination of the fee motion." *Mail Am. Commc'ns, Inc. v. World Healing Ctr. Church, Inc.*, 2021 WL 3159764, at *2 (S.D.N.Y. June 18, 2021) (quoting *Topps Co., Inc. v. Koko's Confectionary & Novelty*, 2020 WL 6082093, at *2 (S.D.N.Y. Oct. 15, 2020)). On the other hand, however, the routine deferral of a decision on an attorney fee motion would disserve one of the main objectives of Rule 54(d)(2)(B). That rule requires a motion for fees to be made no later than fourteen days after the entry of judgment in order "to minimize the need for piecemeal appeals." *Weyant v. Okst*, 198

4

F.3d 311, 314 (2d Cir. 1999). "Prompt filing . . . enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case." *Id.* (quoting Fed. R. Civ. P. 54 advisory committee note to 1993 amendment). In addition, "[p]rompt filing affords an opportunity for the court to resolve the fee disputes shortly after trial, while the services performed are freshly in mind." Fed. R. Civ. P. 54 advisory committee note to 1993 amendment. Finally, "[d]eferring the Court's decision would prejudice Defendants by delaying relief" and "revisiting this issue in the future would invite the possibility of duplicative briefing." *DarkPulse, Inc. v. Crown Bridge Partners LLC*, 2023 WL 8458280, at *1 (S.D.N.Y. Nov. 7, 2023).

      The balance of these factors favors the Court's prompt resolution of Defendants' attorney's fee motion now rather than deferral until after the Second Circuit has addressed Adstra's appeal. The Court has only recently decided the motion for summary judgment, and the proceedings that resulted in the resolution of that matter remain fresh in the Court's mind. Adstra has requested from the Second Circuit a deadline of June 17, 2025, to file its brief on appeal. Dkt. No. 217-6. Were the Court to wait until after briefing, argument, and decision of the appeal in the Second Circuit, the case would be a distant memory, making it more difficult for the Court to fairly determine the reasonableness of the fee request. In addition, Plaintiff has raised a number of objections to the fee request, apart from the question whether Defendants were entitled to prevail at summary judgment. By resolving those issues now, if the Court has erred, Plaintiff may raise those issues with the Second Circuit so that it can resolve the case in its entirety and not piecemeal. Finally, there is the matter of Adstra's financial condition. In its pleading before this Court, Adstra stated that "Acxiom's access to and use of [its data] will have

the effect of destroying or substantially impairing Adstra's business unless Acxiom is stopped immediately." Dkt. No. 1 ¶ 150.  The Court concluded that by virtue of the assignment, Acxiom had the right to Adstra's data.  If, in fact, Adstra is in any form of financial distress and wishes not to pay the fee award before an appeal is resolved, it may seek a stay but only by providing a bond or other security.  Dkt. No. 62(b).  A decision deferring a ruling on the request for fees or denying the motion without prejudice to renewal would effectively stay the requirement for Adstra to pay any fee award without requiring Adstra to provide security.  This would put Defendants at risk that by the time the motion is decided, Adstra will no longer be able to pay.  The Court accordingly turns to the fee request.

"Under New York law, 'when a contract provides that in the event of litigation the losing party will pay the attorney' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'" *KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 139–40 (S.D.N.Y. 2021) (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (citation omitted)), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022); *see Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003).  The intention that attorneys' fees be awarded to the prevailing party must be "unmistakably clear." *OVES Enter., SRL v. NOWwith Ventures, Inc.*, 2024 WL 4635399, at *6 (S.D.N.Y. Oct. 31, 2024) (citing *AT & T Corp. v. Publ'g Concepts L.P.*, 2010 WL 1191380, at *5 (S.D.N.Y. Mar. 29, 2010)); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual

language is sufficiently clear."); *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 2024 WL 3409278, at *2 (S.D.N.Y. July 15, 2024).

Section 16 of the MDSA provides, in pertinent part:

> If any legal action is brought by a party to enforce this Agreement, the prevailing party will be entitled to receive its reasonable attorneys' fees, court costs, and other out-of-pocket collection expenses, in addition to any other relief it may receive.

Dkt. No. 102-4 § 16.  The MDSA thus is clear and unambiguous that the prevailing party is entitled to a recovery of its "reasonable attorneys' fees, court costs, and other out-of-pocket collection expenses." *Id.*

Having secured complete dismissal of Adstra's claims against them, Acxiom and Kinesso are prevailing parties.  *See SING for Serv., LLC v. DOWC Admin. Servs., LLC*, 2023 WL 3294279, at *5 (S.D.N.Y. May 5, 2023) ("To be considered a prevailing party, one must simply prevail on the central claims advanced, and receive substantial relief in consequence thereof." (quoting *Sykes v. RFD Third Ave. I Assocs., LLC*, 833 N.Y.S.2d 76, 77–78 (1st Dep't 2007))).

Adstra argues that because the Court determined that Kinesso is no longer a party to the MDSA, Kinesso has no contractual "prevailing party" right to recover attorneys' fees.  Dkt. No. 214 at 1, 7–9.  It argues that either Acxiom or Kinesso would have been Adstra's counterparty at the time of the lawsuit, but not both.  *Id.* at 7.[1]  However, the premise that enforcement of an attorneys'-fee provision depends on the status of the contract at the time of the lawsuit is not sound.  "It is a general principle of contract law that '[a]lthough termination and cancellation of

---

[1] In fact, it follows from the Court's decision that at the time of the lawsuit in April 2024, the MDSA had already been validly terminated by Acxiom.  *See* Dkt. No. 203 at 39 ("Since the assignment was valid, Acxiom had the right to terminate the MDSA, the notice of termination issued by Acxiom was valid, and Adstra was not entitled to payments on the contract beyond February 2024.").  Therefore, by Adstra's logic, it had no "counterparty" under the MDSA at the time of the lawsuit.  This does not affect Acxiom's ability to recover attorneys' fees, because, as stated below, the attorneys'-fees provision survives the termination of the contract.

7

an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes.'" *Vogel v. Boris*, 2024 WL 1884479, at *2 (S.D.N.Y. Apr. 30, 2024) (quoting 13 Corbin on Contracts § 67.2). Thus, the "widely-held view . . . is that an attorney fee provision applies to an action to determine the parties' rights and duties under the contract notwithstanding the contract's termination." *Maida v. Ret. & Health Servs. Corp.*, 1994 WL 514521, at *7 (6th Cir. 1994) (collecting cases). Similarly, "a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof." *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 626 (N.Y. 1997) (citing *Nolde Bros. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 251–53 (1977)).

 The law could hardly be otherwise. It is elementary that on breach of contract, the nonbreaching party may terminate the contract and sue for damages. *See, e.g.*, *Hobish v. AXA Equitable Life Ins. Co.*, 2025 WL 83783, at *4 (N.Y. Jan. 14, 2025); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Indeed, seeking damages for breach of contract "terminat[es] the contractual relation between the parties." *Lucente*, 310 F.3d at 258. But it is in this precise situation that an attorneys'-fees provision, or similarly an arbitration provision, becomes relevant. *See Maida*, 1994 WL 514521, at *8 ("The parties' wish that a prevailing party recover its attorney fees was not likely to evaporate if the dispute arose out of termination of the contract."). If an attorneys'-fees provision became unenforceable by virtue of a suit for breach of contract, the provision would lose virtually all meaning. Likewise, in an assignment, the assignor gives up rights to the obligor's future performance under the contract, allowing the assignee to gain the benefits of contract such person would not have in the absence of the

8

assignment.  But as with termination, this does not mean that the attorneys' fee provision does not apply to a contractual dispute between the assignor and obligor.  The contrary view would lead to an absurd conclusion.  If, as in this case, the contractual dispute involves an allegedly improper assignment, the assignor would be able to prove that the assignment was lawful only at the expense of relieving the party alleging a breach of the obligation to reimburse the winning party its attorneys' fees.

Both Kinesso and Adstra are entitled to attorneys' fees here.  Adstra sued Kinesso for breach of contract, alleging that Kinesso breached the MDSA by purportedly assigning it to Acxiom without Adstra's consent and sharing data with Acxiom in violation of the MDSA's confidentiality provision. Dkt. No. 1 ¶¶ 117–124.  Kinesso prevailed based on the Court's determination that the assignment was effective and did not breach the MDSA.  The lawsuit is the type of run-of-the-mill contractual dispute the attorneys'-fees provision was clearly intended to cover.  The attorneys'-fees provision of the agreement does not carve out claims brought after termination or assignment of the agreement, but simply states that "[i]f any legal action is brought by a party to enforce this Agreement, the prevailing party will be entitled to receive its reasonable attorneys' fees." Dkt. No. 102-4 § 16.  Kinesso is a prevailing party in a legal action to enforce the Agreement.  The parties would not have intended that the happenstance of whether Adstra brought its suit at the time of the breach or at a later time after the assignment should determine whether the attorneys'-fees provision would apply.  The fact that the assignment was actually valid heightens rather than dispels the need for protection from a meritless suit.  *See Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 390 (S.D.N.Y. 2023) (rejecting contractual interpretation that is "commercially unreasonable . . . [and] contrary to the intent of the parties" (quoting *Cole v. Macklowe*, 953 N.Y.S.2d 21, 23 (1st Dep't 2012))).

Acxiom is also entitled to attorneys' fees. When the contract was assigned to Acxiom, Acxiom acquired Kinesso's rights under the MDSA, including the right to attorneys' fees as a prevailing party and the reciprocal obligation to pay Adstra's attorneys' fees if Acxiom did not prevail. *See U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets*, 2016 WL 4368377, at *4–6 (S.D.N.Y. Aug. 12, 2016). Adstra has sued Kinesso to enforce the contract against it, and Adstra has also sued Acxiom to enforce the contract against it. Dkt. No. 1 ¶¶ 117–125. If Adstra prevailed, it would be entitled to attorneys' fees from both Defendants; Defendants have prevailed against Adstra's attempts to enforce the contract, and thus they are both entitled to attorneys' fees from it.[2]

In any case, Adstra's argument would not affect the amount of the attorneys' fee award, but only whether Kinesso and Acxiom are entitled to recover the fee jointly and severally. When a plaintiff is awarded attorneys' fees against multiple liable defendants, "[n]ormally, the total amount of an attorney's fee award is imposed jointly and severally upon all defendants found liable, at least in the absence of 'separate and distinct' fee components attributable to the litigating tactics of individual defendants." *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 437 (2d Cir. 2002) (quoting *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990)); *see Trs. of the*

---

[2] Although Adstra suggests there is "no authority that allows an assignee *and* an assignor to both take advantage of a prevailing party fee provision," Dkt. No. 214 at 8, in one of the cases it cites for this proposition, a counterparty was required to indemnify both assignor and assignee for attorney's fees, *see Starobin v. Randolph Computer Corp.*, 689 F. Supp. 323, 327–329 (S.D.N.Y. 1988). Nor is it illogical or unfair for both Kinesso and Acxiom to take advantage of the provision. Kinesso has rights and remedies under the contract because it was a party to the contract prior to November 2023, and Acxiom has rights and remedies under the contract because it was a party after that point. Adstra sued each party with respect to its respective obligations under the contract, and if it prevailed it would have been entitled to attorneys' fees from each party. It would be illogical and unfair for Kinesso to be forced to bear its own fees in a lawsuit against it under the MDSA, in which it bargained for such fees to be covered, simply because Adstra is also suing Acxiom for additional later breaches of the MDSA.

*Loc. 813 Pension Tr. Fund v. Canal Carting, Inc.*, 2014 WL 843244, at *18 (E.D.N.Y. Mar. 4, 2014). Analogously here, absent distinct work that was performed by counsel on behalf of Acxiom and not Kinesso, or vice versa, the entire award of fees should be imposed jointly and severally in favor of Defendants. Given the course of the litigation here, there are no "separate and distinct" fee components that would justify allocating fees to one Defendant and not the other. *Koster*, 903 F.2d at 139. Adstra and Kinesso were jointly represented and billed, and they submitted joint briefs throughout the litigation. The focus of the defense strategy for both Defendants was that the assignment was valid and therefore claims against both of them should be dismissed. If Adstra had sued only Acxiom or only Kinesso, counsel would have been required to do the exact same work to show that the assignment was valid and that Kinesso did not provide any trade secrets to Acxiom before the assignment. There is no cause for the Court to allocate certain fees to Acxiom and other fees to Kinesso, thereby reducing the award of fees to the other Defendant.

Adstra also argues that the Court should dramatically reduce the attorneys' fees claimed by Defendants because they are excessive and unreasonable. Dkt. No. 214 at 12–19. Defendants seek an award of $2,456,069, consisting of $2,117,524.47 for fees incurred to Greenberg Traurig and $338,545.36 for other expenses, including the retention of two experts. Dkt. No. 213 at 7–8, 10; *see* Dkt. No. 212. Adstra claims that the attorney fee award should be reduced by 30% to account for Defendants' failure to submit contemporaneous detailed billing records with their fee motion, Dkt. No. 214 at 12, that the hourly rate sought by Defendants is unreasonable and that a 36.3% reduction should be applied to the stated rates for all professionals, *id.* at 12–15, and that a further 20% reduction to the requested fees should be applied to account for the fact that only three of Adstra's ten claims were for enforcement of the MDSA, *id.* at 19.

11

Adstra's request that the attorney's fee request be reduced by 20% to account for the presence of the other claims in the case is without merit. Although not all of Adstra's claims sounded directly in breach of the MDSA, the MDSA was at the core of all claims in this case. Thus, the work done by counsel would not have been substantially different if Adstra had brought claims only for breach of the MDSA.

In the similar context where the party seeking fees has prevailed on some but not all of its claims, the court looks to whether the claims "involve a common core of facts" or are "based on related legal theories." *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 435). In that instance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 435). By contrast, "the district court should exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Where claims are related to one another, the appropriate inquiry is to "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 435); *see Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2023 WL 112429, at *6 (S.D.N.Y. Jan. 5, 2023).

The work that would have been necessary to defend against the breach of the MDSA contract claim was tightly "interwoven," *PaySys Int'l, Inc. v. Atos Se*, 2019 WL 2051812, at *6 (S.D.N.Y. May 9, 2019), with the work necessary to defend against each of the other claims. Defendants' arguments against Plaintiff's claims to enforce the MDSA were that the conduct by Kinesso prior to assignment did not breach the confidentiality provisions of the MDSA and the

assignment did not violate the anti-assignment clause. The same arguments were responsive to Plaintiff's claim for breach of the implied covenant. *See* Dkt. No. 203 at 40. There was no separate segregable work to be done on the claim that Defendants breached the other agreements with Plaintiff—the DPA and DPEA. Plaintiff did not offer evidence of a misuse of data under the DPA or DPEA but rather "suggest[ed] these agreements were breached by Acxiom's use of data it received under the MDSA." *Id.* at 45. Defendants' defense to the DTSA and common law misappropriation claims likewise turned on their defense to the claim of a breach of the MDSA: "Acxiom did not acquire the Adstra Data by improper means; it acquired the data through a permitted assignment from Kinesso." *Id.* at 47. Because the use of information that is permitted by contract and therefore is lawfully acquired and used cannot constitute improper means, the Court concluded: "This fact alone is fatal to Adstra's trade secret claim." *Id.* at 47. The same argument was made with respect to the claim for unfair competition, and the same conclusion followed. *Id.* at 48. And, as to the claim for tortious interference, the legal work on that claim was necessarily intertwined with the legal work on the claim for breach of the MDSA because the defense was the same—that the MDSA was not breached. *Id.* at 49.

Adstra's argument that Defendants' fee request is inadequate because it is not supported by contemporaneous detailed time records is also without merit. "Under New York law, a party seeking a fee 'bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent.'" *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, 2021 WL 3292519, at *5 (S.D.N.Y. Aug. 2, 2021) (quoting *Crowhurst v. Szczucki*, 2019 WL 6122645, at *4 (S.D.N.Y. Nov. 19, 2019)). A fee request need only be supported by "a 'proper and sufficient affidavit of services.'" *Crowhurst*, 2019 WL 6122645, at *4 (quoting *Bankers Fed. Sav. Bank FSB v. Off W. Broadway Devs.*, 638 N.Y.S.2d 72, 74 (1st Dep't 1996))

(internal quotations and citations omitted). Thus, in cases in federal court "in which the right to attorneys' fees is governed by state law, New York's more liberal rule allowing reconstructed records appl[ies]." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 147–48 (2d Cir. 2014); *see also Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (holding that the "contemporaneous records" requirement did not apply to fee requests under New York General Business Law § 349 because where "[s]tate law creates the substantive right to attorney's fees, [the] right . . . cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit" and "New York courts have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of wider trial court discretion in evaluating fee petitions" (quoting *In re Karp* 537 N.Y.S.2d 510, 515 (1st Dep't 1989))) (internal citations omitted); *UMB Bank,* 2021 WL 3292519, at *5 n.4 (collecting cases).

Adstra argues that the billing rates of Defendants' counsel "greatly exceed what is typically found to be reasonable in this Court and should be reduced accordingly." Dkt. No. 214 at 12. "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (quoting *In re Schaich,* 391 N.Y.S.2d 135, 136 (2d Dep't 1977), *appeal denied,* 366 N.E.2d 293 (1977)). The analysis of a reasonable fee in a contractual fee-shifting case differs from a statutory fee-shifting case, because in a contract case a paying client will generally negotiate and even pay a fee to counsel at market rates, with only the hope of later recovering this fee through

fee-shifting. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("[T]he fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses."). Because "[t]he reasonable hourly rate is the rate a paying client would be willing to pay," the fact that a paying client was willing to pay and in fact paid a certain amount to litigate a case is strong evidence that the fee was reasonable. *Lilly v. City of New York*, 934 F.3d 222, 232–233 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Weiwei Gao v. Sidhu*, 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) (stating that the existence of an actual fee agreement "is an important factor in determining the reasonableness of the fees").

However, the Court must still scrutinize such fees. "[W]hile plaintiff may enter into any fee arrangement it wishes with counsel, it should not be permitted to manipulate the actual damage incurred by burdening the defendant with an exorbitant fee arrangement." *F.H. Krear*, 810 F.2d at 1263 (quoting *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 397 (N.Y. 1976)); *see OVES Enter.*, 2024 WL 4635399, at *6. The contractual obligation to indemnify a counterparty for attorneys' fees does not extend to fees which are unreasonable or "grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement." *F.H. Krear*, 810 F.2d at 1263. In addition, an attorneys'-fees clause "does not permit plaintiff to demand from defendant greater expenses than plaintiff has itself incurred." *Parker Hannifin Corp. v. N. Sound Props.*, 2013 WL 3527761, at *3 (S.D.N.Y. July 12, 2013) (internal citations omitted).

The rates for Greenberg Traurig's legal services were negotiated at arms' length between sophisticated parties where Defendants faced a real risk that they would have to bear the costs without any fee-shifting. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465–66

15

(S.D.N.Y. 2004) (holding that fees were reasonable when negotiated by "sophisticated Lead Plaintiffs . . . at arm's length before this litigation commenced"). Greenberg Traurig's services were provided at a 22% discount from standard rates, which was provided due to Greenberg Taurig's long relationship with the clients' parent entity. Dkt. No. 218 ¶ 3. The rates charged by Greenberg Taurig were not simply hypothetical but were actually billed to the client and paid. Dkt. No. 212 ¶ 7. And they were in fact below Greenberg Taurig's customary billing rates to other clients, supporting their reasonableness. *Id.* ¶ 4. Defendants' legal fees were primarily billed by one partner, three associates, and one paralegal at Greenberg Taurig. Dkt. No. 212 ¶ 4; Dkt. No. 218. The associates had approximate billed rates of $554, $569, and $883,[3] while the partner had an approximate billed rate of $1,421. Dkt. No. 218. The combined average billing rate for Greenberg Taurig's lawyers on this matter was $843 per hour. Dkt. No. 212 ¶ 4.

These rates are not unreasonable given the factual and legal complexity of this matter, the experience of the lawyers, and the amount involved. "Courts in this District have recognized that an 'attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of the market rate.'" *Graziano v. First Unum Life Ins. Co.*, 2024 WL 1175143, at *2 (S.D.N.Y. Mar. 19, 2024) (quoting *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006)). Although the rates are not low, "[i]n this district, partner billing rates in excess of $1,000 are 'not uncommon in the context of complex commercial litigation.'" *OVES Enter.*, 2024 WL 4635399, at *6 (quoting *Themis Cap. V. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014)); *see ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (approving similar rates); *Vista Outdoor Inc. v.*

---

[3] The associate with a billing rate of $883 had thirteen years of practice experience and has since been promoted to of counsel. Dkt. No. 212 ¶ 4.

*Reeves Fam. Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (describing similar rates as "not excessive in the New York City 'big firm' market"). Plaintiff vigorously litigated ten causes of action through a TRO, preliminary injunction, motion to dismiss, multiple discovery disputes, and eventually a motion for summary judgment. Plaintiff's high litigation costs are thus a function of its litigation strategy rather than unreasonable billing. *See ATX Debt Fund*, 2024 WL 2093387, at *5 (noting that a party could not complain that fees were unreasonable after it "drove up the cost and complexity of litigation").

        Defendants are not entitled to recover expert fees under the contract. The MDSA states that "the prevailing party will be entitled to receive its reasonable attorneys' fees, court costs, and other out-of-pocket collection expenses." Dkt. No. 102-4 § 16. Under New York law, this provision must be read narrowly. *See OVES Enter.*, 2024 WL 4635399, at *6; *Spodek v. Neiss*, 926 N.Y.S.2d 904, 904 (2d Dep't 2011). None of the three categories mentioned in the provision is naturally read to encompass expert fees. "[T]he term 'attorneys' fees,' standing alone, is generally not understood as encompassing expert fees." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 303 (2006). The term "court costs" is naturally read to refer to routine service and filing fees such as those enumerated in Federal Rule of Civil Procedure 54 and S.D.N.Y. Local Rule 54.1. *See* Fed. R. Civ. P. 54(d); S.D.N.Y. Local Rule 54.1(c); *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 2008 WL 4833025, at *8 (S.D.N.Y. Nov. 3, 2008) ("Local Civil Rule 54.1, Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 provide a framework for determining the proper award of statutory court costs."); *Dist. Council No. 9, Int'l Union of Allied Painters & Allied Trades, AFL-CIO v. Impact Storefront Designs*, 2023 WL 3818408, at *3 (S.D.N.Y. June 5, 2023) ("Court costs for service fees are routinely permitted."). "[C]ollection expenses" naturally refers to expenses incurred in collecting a sum of money, for

17

example on a loan or invoice. *See Byline Bank v. SDS Dining Corp.*, 2024 WL 1422812, at *3 (S.D.N.Y. Apr. 3, 2024); *EOI Elecs., Inc. v. Xebec*, 785 F.2d 391, 397 (2d Cir. 1986); *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 970 F. Supp. 333, 337–341 (S.D.N.Y. 1997). Defendants were not attempting to collect any money in retaining the experts here.

Defendants contend that "expert fees are necessary and customary components to litigation" and there is "no commonsense reason" to "carve [them] out" of Defendants' recovery. Dkt. No. 219 at 9. However, it was up to the parties when they negotiated the contract to determine what costs would be shifted in the event of litigation between them, and Defendants have offered no reason for the Court to depart from the language the parties chose. In case law regarding statutory fees, courts have had no trouble "carv[ing] out" expert fees from related "components of litigation" such as attorneys' fees and costs. Dkt. No. 219 at 9; *see Arlington Cent.*, 548 U.S. at 297–303 ("[N]o statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees."); *Gortat v. Capala Bros.*, 795 F.3d 292, 296 (2d Cir. 2015). Similarly here, the Court cannot simply assume that the parties intended to include expert fees under the heading of some term which on its face does not to include them. Cases awarding expert fees generally either refer to expert fees explicitly or include a catchall for "all" or "other" costs of litigation. *See Themis Cap.*, 2014 WL 4379100, at *1 ("all out-of-pocket expenses"); *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 567 F. Supp. 2d 579, 601 (S.D.N.Y. 2008) ("reasonable attorneys' fees and other costs incurred"), *aff'd sub nom. Austrian Airlines Oesterreichishe Luftverkehrs AG v. UT Fin. Corp.*, 336 F. App'x 39 (2d Cir. 2009); *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 2024 WL 4880075, at *1 (S.D.N.Y. Nov. 25, 2024) ("attorneys' fees, court costs, and expert witness fees"). The language here regarding "other out-of-pocket collection expenses," Dkt. No. 102-4

§ 16, is not comparably clear and in fact seems to cut against coverage of an expert witness in any situation that does not involve collection of a debt due on the contract. The Court will not award Defendants their requested $238,517.22 in expert fees.

The Court also will not award Defendants their requested "fees on fees." "[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *F.H. Krear*, 810 F.2d at 1266. Absent "specific language to indicate that time spent in justifying a fee application was to be included," a contractual fee-shifting provision will be deemed to exclude attorneys' fees for litigating the fee dispute. *Id.* at 1267; *see PaySys Int'l*, 2019 WL 2051812, at *6; *546-552 W. 146th St. LLC v. Arfa*, 950 N.Y.S.2d 24, 27 (1st Dep't 2012) (holding that language indemnifying parties against "all claims and demands to the maximum extent permitted" was not sufficient to support award of fees on fees); *IG Second Generation Partners, L.P. v. Kaygreen Realty Co.*, 980 N.Y.S.2d 479, 481 (2d Dep't 2014) (holding that as "[t]he relevant provision of the lease . . . does not contain clear language expressly providing for an award of fees on fees . . . a right to recover those fees should not be implied"). The general language here allowing parties to recover "reasonable attorneys' fees, court costs, and other out-of-pocket collection expenses," Dkt. No. 102-4 § 16, here unambiguously entitles Defendants to recovery of their attorneys' fees. There is no additional language justifying fees on fees. *See KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 141 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022); *Novick v. AXA Network, LLC*, 714 F. App'x 22, 26 (2d Cir. 2017) (summary order).[4]

---

[4] Some cases have suggested that fees on fees are properly awarded whenever there is language in a contractual provision allowing for attorneys' fees for "enforcement" of the agreement, because the attorneys'-fee provision is part of the agreement. *See Billybey Marina Servs., LLC v. Bouchard Transp. Co.*, 2021 WL 4950835, at *5 (S.D.N.Y. Oct. 25, 2021); *Sidley Holding Corp. v. Ruderman*, 2009 WL 6047187, at *23 (S.D.N.Y. Dec. 30, 2009) ("[L]anguage obligating one

19

The Court has reviewed Defendants' billing records and identified entries related to the motion for fees on February 19, 20, 21, 24, 25, and 26, 2025. Dkt. No. 218-1 at 62. The Court finds that Defendants billed approximately $22,500 for work on the motion for fees and will deduct that amount from Defendants' recovery.[5]

## CONCLUSION

The motion for attorneys' fees is GRANTED IN PART and DENIED IN PART. The motion is denied with respect to expert fees and fees on fees, and otherwise granted.

Defendants are awarded $2,095,024.47 in attorneys' fees and $100,028.14 in other costs and expenses for a total of $2,195,052.61. The attorneys' fees award is equal to the total attorneys' fees sought of $2,117,524.47, minus $22,500 in fees on fees. The expenses award is equal to the total expenses sought of $338,545.36, minus $238,517.22 in expert fees.

The Clerk of Court is respectfully directed to close Dkt. No. 211.

SO ORDERED.

Dated: April 9, 2025
      New York, New York

                                             LEWIS J. LIMAN
                                            United States District Judge

---

party to reimburse the other for 'enforcement' of a contract has been interpreted as sufficiently clear to include the reimbursement of fees incurred in the preparation of a fee request."), *report and recommendation adopted*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010). However, New York decisions emphasize that the agreement must "explicitly" or "unmistakably" provide for such fees. *See Novick*, 714 F. App'x at 26 (quoting *Jones v. Voskresenskaya*, 5 N.Y.S.3d 16, 18 (1st Dep't 2015) and then quoting *IG Second Generation*, 980 N.Y.S.2d at 481). Language stating that attorneys' fees can be recovered for enforcing the contract is commonplace and may be necessary to recover any expenses at all. Such language does not speak with the level of specificity necessary to conclude that the parties had considered the issue and decided to move away from the default rule against fees on fees. Similarly, the general language here regarding "out-of-pocket collection expenses" does not "explicitly" or "unmistakably" speak to the issue of fees on fees. *Id.*

[5] Certain of Defendants' entries block billed the motion for fees with other entries for which Defendants could properly recover. Because block billing "is generally disfavored," the Court assumes that these entries consisted largely or entirely of work on the fee application. *Raja*, 43 F.4th at 87.

20